NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HAROLD TAYLOR, | : |
| Plaintiff, | : OPINION |
| v. | : Civ. No. 09-1628 (WHW) |
| NATIONAL CAR RENTAL SYSTEM, INC. & VANGUARD CAR RENTAL USA, INC., | : |
| Defendants. | : |

**Walls, Senior District Judge**

Defendant Vanguard Car Rental USA, Inc. d/b/a National ("Defendant")[1] moves to dismiss Plaintiff Harold Taylor's ("Plaintiff") Complaint and moves for summary judgment. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the Court decides Defendant's motion without oral argument. Because Defendant's Motion to Dismiss is granted, the Court does not reach Defendant's Motion for Summary Judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is a New Jersey resident who worked approximately 30 years for Defendant. (Compl. ¶ 1.) Defendant is a Delaware corporation with its primary place of business in

---

[1] Defendant Vanguard Car Rental USA, Inc. maintains that it was "incorrectly denominated in the Complaint as 'National Car Rental System, Inc.', as there is no such corporation." (Notice of Removal pmbl.) Defendant identifies itself as "Vanguard Car Rental USA, Inc. [] d/b/a National." (Id.) The Court refers to Vanguard or National as "Defendant."

NOT FOR PUBLICATION

Oklahoma. (Notice of Removal pmbl.)

Before his termination on March 10, 2008 (Compl. ¶ 5), Plaintiff was employed as a service agent for Defendant and served as the Shop Steward for his local teamsters union (Compl. ¶¶ 1, 2). Plaintiff contends that his termination was "the result of his activities in behalf of the Union and its members against the management of the defendant." (Compl. ¶ 6.) On September 8, 2008, Plaintiff filed a complaint against Defendant with the National Labor Relations Board. (Comp. ¶ 7.) On February 17, 2009, Plaintiff sued Defendant in the Superior Court of New Jersey, Law Division, Essex County, alleging that, by terminating him because of his union activities, Defendant violated his rights under Article 1, Paragraph 19 of the New Jersey State Constitution. (Compl. ¶ 8.) Plaintiff alleged that his termination had caused him economic, emotional, and psychological harm (Compl. ¶ 9), and sought compensatory damages, punitive damages, and equitable relief against Defendant (Compl. Prayer for Relief).

Plaintiff served Defendant with the Complaint on March 16, 2009. (Notice of Removal ¶ 3.) On April 7, 2009, Defendant removed the civil action to this Court. (Id. ¶¶ 7, 8.) Defendant then filed a Motion to Dismiss Plaintiff's Complaint and for Summary Judgment Pursuant to Rules 12(b)(6), 12(d), and 56 of the Federal Rules of Civil Procedure. Defendant argues that Plaintiff's state law claim is preempted by the National Labor Relations Act and that this Court must defer to the exclusive jurisdiction of the National Labor Relations Board.

STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court is required to "accept all factual allegations as true, construe the complaint in the light most

**NOT FOR PUBLICATION**

favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 306 (3d Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly at 546. Thus, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Twombly at 563 n.8 (citation omitted).

**DISCUSSION**

In 1935, Congress passed the National Labor Relations Act ("NLRA" or "Act"), 29 U.S.C. §§ 151, et. seq., in order to "prevent[] the disturbance to interstate commerce consequent upon strikes and labor disputes induced or likely to be induced because of unfair labor practices." Nat'l Labor Relations Bd. v. Fainblatt, 306 U.S. 601, 670 (1939). Section 7 of the NLRA enumerates permitted labor practices, including the right of employees to "self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 8 of the NLRA enumerates prohibited labor practices, including interfering with or restraining the right of employees under

NOT FOR PUBLICATION

Section 7 and discriminating in hire or tenure in order to encourage or discourage membership in a labor organization. 29 U.S.C. § 158(a)(1), (3).

The Act also created the National Labor Relations Board ("NLRB" or "Board") and vested the Board with "jurisdiction over labor relations matters affecting interstate commerce." Guss v. Utah Labor Relations Bd., 353 U.S. 1, 2 (1957). Sections 3 through 6 of the NLRA provide for the creation and composition of the Board. 29 U.S.C. §§ 153-156. Under Section 10, the Board is empowered to prevent unfair labor practices, including by holding hearings and issuing orders. 29 U.S.C. § 160(a)-(c).

The Board's exercise of its power to prevent unfair labor practices necessarily requires an initial determination of whether a particular activity constitutes a permitted or prohibited labor practice under Sections 7 and 8. The Supreme Court has held that this determination is the province of the Board alone. In San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959), the Court found that Congress intended to create a uniform, consistent, and centrally administered system of national labor law. Id. at 242-4. Because the use of a "multiplicity of tribunals" is apt to produce conflicting rules of law, id. at 243, the Court held that "[i]t is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board." Id. at 244-5. Under this "Garmon preemption" doctrine, state causes of action based on state regulation of particular labor activities are preempted by the NLRA, and "[w]hen an activity is arguably subject to [Sections] 7 or [] 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." Id. at 245.

NOT FOR PUBLICATION

In this case, Plaintiff alleges that he was terminated as a result of his union activities (Compl. ¶¶ 4-6), and seeks relief under Article I, Paragraph 19 of the New Jersey State Constitution (Compl. ¶ 8). This provision states that "[p]ersons in private employment shall have the right to organize and bargain collectively," N.J. Const. art. I, ¶ 19, and was intended to protect workers who are not covered by the NLRA. S. Jersey Catholic Sch. Teachers Org. v. St. Teresa of the Infant Jesus Church Elementary Sch., 150 N.J. 575, 585 (1997); George Harms Constr. Co. v. New Jersey Turnpike Auth., 137 N.J. 8, 28 (1994).[2] The activities at issue here are, at the very least, arguably covered by the NLRA.

---

[2] In these cases, the New Jersey Supreme Court supported this interpretation of Paragraph 19 by citing to Richard A. Goldberg & Robert F. Williams, Farmworkers' Organizational and Collective Bargaining Rights in New Jersey: Implementing Self-Executing State Constitutional Rights, 18 Rutgers L.J. 729, 742 (1987), in which the authors asserted that "Paragraph 19 was adopted specifically to provide protection to employees not covered by the preemptive federal statutory guarantee." Id. at 742. As authority for this proposition, the authors cited to Johnson v. Christ Hospital, 84 N.J. Super. 541 (1964), in which the Superior Court held that, as a state court, it retained jurisdiction over matters involving employees of charitable hospitals, since these employees were specifically exempt from the provisions of the federal Labor Management Relations Act of 1947. Id. at 545. Importantly, the Superior Court did not hold that Paragraph 19 was intended to cover all employees not covered by the federal labor statutes. Thus, the New Jersey Supreme Court's holding that Paragraph 19 applies only to workers not covered by the NLRA appears to be the result of its reliance on a journal article's misinterpretation and/or undue expansion of a single lower court statement made decades earlier.

Paragraph 19 protects "the right to organize and bargain collectively," and Section 7 of the NLRA protects "the right to self-organization [and] to bargain collectively." Because it protects the same rights as the NLRA, it seems that Paragraph 19 applies to workers who *are* covered by the NLRA – in which case all state claims under Paragraph 19 would be "presumptively preempted," and causes of action under Paragraph 19 could be sustained only when it is determined that "the behavior to be regulated is behavior that is of only peripheral concern to the federal law or touches interests deeply rooted in local feeling and responsibility." Belknap, Inc. v. Hale, 463 U.S. 491, 498 (1983). See Footnote 4 below. However, this Court, sitting in diversity, must apply the New Jersey Supreme Court's interpretation of state law. Erie R. Co. v. Tompkins, 304 U.S. 64, 77 (1938). Thus, for the purpose of this motion, Paragraph 19 is deemed to apply to workers not covered by the NLRA.

**NOT FOR PUBLICATION**

Plaintiff's conduct, which included "his activities in behalf of the Union and its members against the management of the defendant," is protected under Section 7, which guarantees the right to join and assist in unions, and to engage in collective bargaining and other concerted activities. 29 U.S.C. § 157. Defendant's alleged conduct, which consisted of terminating Plaintiff because of his union activities, is prohibited under Section 8, which prevents employers from interfering with an employee's exercise of Section 7 rights and from discriminating against employees in order to encourage or discourage membership in a union. 29 U.S.C. § 158.

Thus, the conduct alleged by Plaintiff is arguably subject to Sections 7 and 8 of the NLRA. This finding is supported by Plaintiff's own decision to file a charge against Defendant with the NLRB (Compl. ¶ 7),[3] as "the charge itself demonstrates that the conduct alleged arguably falls within the jurisdiction of the NLRB pursuant to Section 8." Bergen Reg'l Med. Ctr. v. Health Prof'ls and Allied Employees Union, Civ. No. 05-2596, 2005 WL 3216549, at *6 (D.N.J. Nov. 29, 2005) (citation omitted). Under Garmon preemption, this Court must defer to the NLRB to determine whether the conduct in question is covered by Sections 7 or 8.

---

[3] Although Plaintiff failed to state as much in his Complaint, the exhibits attached to Defendant's motion show that Plaintiff withdrew the NLRB charge before he brought suit in state court. (Def. Br. Ex. C, Ex. F.) This information is a factual matter outside the pleadings and is presented for informational purposes only; the Court does not consider it or rely upon it in reaching its decision and therefore does not convert this 12(b)(6) Motion to Dismiss into a Rule 56 Motion for Summary Judgment. See Fed R. Civ P. 12(d) ("If, on a motion under Rule 12(b)(6) [], matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

NOT FOR PUBLICATION

Moreover, because Article I, Paragraph 19 of the New Jersey Constitution only applies to workers who are not covered by the NLRA, and because Plaintiff is arguably covered by the NLRA, he cannot avail himself of the remedies available under Paragraph 19 unless and until the NLRB determines that the activities in question are not covered by Sections 7 or 8 of the NLRA or otherwise declines to assert jurisdiction.[4] The Plaintiff has failed to present a claim that this Court can adjudicate, and the Court must dismiss the Complaint for Failure to State a Claim Upon Which Relief Can Be Granted.[5]

---

[4] In Cooper v. Nutley Sun Printing Co., 36 N.J. 189 (1962), the New Jersey State Supreme Court adjudicated a Paragraph 19 claim only when the NLRB had already declined to assert jurisdiction over the matter because of "the slight impact of the [activities] on interstate commerce." Id. at 193-4.  See 29 U.S.C. § 164(c)(2).

[5] Although Defendant's Motion to Dismiss was framed as a 12(b)(6) motion and this Court dismisses Plaintiff's Complaint under 12(b)(6), the Court notes that federal courts have dismissed complaints involving conduct that is arguably subject to §§ 7 or 8 of the NLRA under different subsections of Rule 12(b).  A review of relevant case law demonstrates that some courts have dismissed for lack of subject matter jurisdiction under 12(b)(1), others have dismissed for failure to state a claim under 12(b)(6), and still others have apparently dismissed under both subsection, or without explicitly stating under which subsection they are dismissing.

The variation, and perhaps confusion, regarding the appropriate method for dismissing such complaints presumably result from the nebulous nature of Garmon preemption.  In Garmon and subsequent preemption cases, the Supreme Court repeatedly refers to the "jurisdiction" and "primary jurisdiction" of the Board.  See, e.g., Garmon, 359 U.S. 236, 245 (1959); Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 83 (1982); Lodge 76, Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Wis. Employment Relations Comm'n, 427 U.S. 132, 138 (1976).  However, the Supreme Court also refers to the primary "competence" of the Board, Garmon at 245; Local 100 of United Ass'n of Journeymen and Apprentices v. Borden, 373 U.S. 690, 693-694 (1963), and has noted that its use of the term "primary jurisdiction" in the Garmon context is not to be confused with conceptually distinct "doctrine of primary jurisdiction."  Sears, Roebuck, & Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180, 200 n.29 (1978).

Despite its use of the word "competence" and its statement that Garmon preemption is distinct

**NOT FOR PUBLICATION**

---

from the concept of primary jurisdiction, the Supreme Court has specifically stated that Garmon preemption is jurisdictional in nature. Int'l Longshoremen's Ass'n, AFL-CIO v. Davis, 476 U.S. 380, 390 (1986) (citing to Local No. 438 Const. and Gen. Laborers' Union, AFL-CIO v. Curry, 371 U.S. 542 (1963)). Similarly, it has held that, where the allegations of a complaint make out an arguable violation of the NLRA, a state court lacks "jurisdiction" to issue an injunction or adjudicate the controversy. Curry at 546. Yet, the Court has also stated that "[a] claim of Garmon pre-emption is a claim that the state court has no power to adjudicate the subject matter of the case, and when a claim of Garmon pre-emption is raised, it must be *considered and resolved by the state court*." Davis at 393 (emphasis added).

Finally, the Supreme Court has suggested that, unlike most jurisdictional determinations – which courts can undertake *sua sponte*, Fed. R. Civ. P. 12(h)(3), and under which courts may assume the truth of pleaded facts and make decisions as a matter of law, Mireles v. Waco, 502 U.S. 9, 11 (1991) – Garmon preemption is a defense that must be raised and proved with facts: "the party claiming pre-emption is required to demonstrate that his case is one that the Board could legally decide in his favor... The party must then put forth enough *evidence* to enable the court to find that the Board reasonably could uphold [his] claim." Davis at 395 (emphasis added).

Thus, although not explicitly stated, it seems that the Supreme Court has taken a two-pronged approach to subject matter jurisdiction in the Garmon preemption context. First, courts have initial jurisdiction to "consider and resolve" whether a particular activity is arguably covered by the NLRA, and during such consideration, the party claiming preemption must show that "the Board could decide in his favor." Davis at 395. Once this consideration is concluded, there are two possible outcomes: if the court determines that the activity is not even arguably covered, it may proceed to adjudicate the case; if the court determines that the activity is arguably covered, it must yield its jurisdiction over the matter to the NLRB by dismissing the case.

With respect to the existence of initial subject matter jurisdiction to "consider and resolve" the Garmon preemption issue, some federal courts hearing cases removed from state courts may find it necessary to address federal removal jurisdiction arising out of the federal question raised by the NLRA's complete preemption of state law. See, e.g., Caterpillar, Inc. v. Williams, 482 U.S. 386, 392-4 (1987); Bergen Reg'l Med. Ctr. v. Health Prof'ls and Allied Employees Union, Civ. No. 05-2596, 2005 WL 3216549, at *3-4 (D.N.J. Nov. 29, 2005). However, this issue is irrelevant here because this Court possesses original jurisdiction over the case based on diversity of the parties and amount in controversy, and therefore possesses removal jurisdiction. 28 U.S.C. §§ 1332(a), 1441. Thus, this Court has initial jurisdiction to "consider and resolve" whether the alleged conduct is arguably covered by Sections 7 and 8 of the NLRA. Having found that it is arguably covered, the Court grants Defendant's Motion to Dismiss under 12(b)(6).

NOT FOR PUBLICATION

**CONCLUSION**

Accepting as true the allegations of Plaintiff's Complaint, the activities alleged by Plaintiff are arguably subject to Sections 7 or 8 of the National Labor Relations Act. Plaintiff's claim is therefore subject to the exclusive jurisdiction of the National Labor Relations Board and cannot be adjudicated by this Court. The claim must be and is dismissed.

It is on this 9th day of October, 2009:

ORDERED that Defendants' Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim Upon Which Relief Can Be Granted is GRANTED.

**s/ William H. Walls**
United States Senior District Judge